WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bernaleen Singer,<br><br>          Plaintiff,<br><br>v.<br><br>Office of Navajo and Hopi Indian Relocation,<br><br>          Defendant. | No. CV-19-08171-PCT-DLR<br><br>**ORDER** |

Plaintiff Bernaleen Singer seeks judicial review of the administrative decision by the Office of Navajo and Hopi Indian Relocation ("ONHIR") denying her application for relocation benefits under the Navajo-Hopi Settlement Act. (Doc. 1.) At issue are the parties' cross-motions for summary judgment, which are fully briefed. (Docs. 29-32, 39-41.) For the following reasons, the Court will grant Ms. Singer's motion, deny ONHIR's motion, and remand ONHIR's decision for further proceedings consistent with this decision.

**I. Background**

    **A.  Navajo and Hopi Relocation Assistance**

In 1882, President Arthur issued an executive order establishing a reservation in northeastern Arizona for the Hopi Nation and "such other Indians as the Secretary of Interior may see fit to settle thereon." *Bedoni v. Navajo-Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1121 (9th Cir. 1989). Members of the Navajo Nation subsequently settled

on the reservation alongside the Hopi. *Id.* "The Hopi and Navajo [Nations] coexisted on the 1882 reservation for 75 years, but became entangled in a struggle as to which [nation] had a clear right to the reservation lands." *Id.* In 1962, this district court concluded that the two tribes held joint, undivided interests in most of the reservation, referred to as the joint use area ("JUA"). *Id.*

Twelve years later, after establishment of the JUA failed to solve inter-tribal conflicts over the land, Congress passed the Navajo-Hopi Settlement Act in 1974. *Id.* The Act authorized the district court to make a final partition of the reservation after federally mandated mediation efforts between the nations failed. *See Sekaquaptewa v. MacDonald*, 626 F.2d 113, 115 (9th Cir. 1980). The Act also directed creation of ONHIR's predecessor, the Navajo-Hopi Relocation Commission, to provide services and benefits to help relocate residents located on lands that the partition allocated to the other nation. *See Bedoni*, 878 F.2d at 1121-22; 25 U.S.C. § 640d-11. To be eligible for relocation benefits, a Navajo applicant bears the burden of demonstrating that he or she was (1) a legal resident on the Hopi Partitioned Lands ("HPL") on December 22, 1974, and (2) a head of household on or before July 7, 1986. 25 C.F.R. § 700.147.

**B.  Facts and Procedural History**

Ms. Singer, an enrolled member of the Navajo Nation, applied for relocation benefits on May 13, 2005. (Doc. 15-3 at 59-61.) ONHIR denied her application on October 11, 2005, finding that she failed to meet the "head of household" requirement before July 7, 1986. (Doc. 15-4 at 19-20.) Ms. Singer timely appealed the denial, and an independent hearing officer ("IHO") held an appeal hearing on April 23, 2010. (Doc. 15-6 at 18-23.) The IHO requested, and the parties submitted, supplemental briefs to address whether Ms. Singer was a party to a valid marriage, and therefore a head of household, prior to July 7, 1986. (*Id.* at 40-58.) On June 28, 2010, the IHO issued a written opinion upholding ONHIR's denial. (Doc. 15-7 at 15-16.) On June 6, 2019, Ms. Singer commenced this action for judicial review pursuant to 25 U.S.C. § 640d-14(g) and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et. seq. (Doc. 1.) The Court heard oral argument

on July 28, 2020 and took this matter under advisement.

**II. Legal Standard**

In reviewing a federal agency's decision under the APA, the district court applies a "narrow and deferential" standard of review. *Mike v. ONHIR*, No. CV-06-0866-PCT-EHC, 2008 WL 54920, at *1 (D. Ariz. Jan. 2, 2008). A reviewing court may reverse an ONHIR decision under the APA if it is arbitrary, capricious, an abuse of discretion, contrary to law, or unsupported by substantial evidence. 5 U.S.C. § 706(2)(A), (E); *see Bedoni*, 878 F.2d at 1122. "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Mike*, 2008 WL 54920, at *1 (quoting *Info. Providers' Coalition for Def. of First Amendment v. FCC*, 928 F.2d 866, 870 (9th Cir. 1991)). Under the arbitrary and capricious standard, courts must determine whether the agency's decision "was based on consideration of relevant factors and whether there has been a clear error of judgment." *Id.* (citing *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.2d 1468, 1471 (9th Cir. 1994)).

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where the court reviews an agency decision under the APA, "the focal point [] should be the administrative record already in existence, not some new record made initially [by] the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142-43 (1973). Thus, when conducting "judicial review pursuant to the APA, 'summary judgment is an appropriate mechanism for deciding the legal question of whether [ONHIR] could reasonably have found the facts as it did.'"[1] *O'Daniel v. ONHIR*, No. 07-354-PCT-MHM, 2008 WL 4277899, at *3 (D.

---

[1] In this Court's view, ONHIR cases would be better resolved via procedures similar to those used in social security disability appeals. *See* LRCiv 16.1. Summary judgment briefing (particularly the use of separate statements of facts) is a poor fit because, at bottom, the Court is tasked with reviewing an administrative record and determining whether the agency's decision comports with the relevant legal standards and is supported by enough evidence. There are no "fact disputes," as that phrase is understood in traditional summary judgment motion practice. There is no trial in the event the parties disagree about what the evidence shows. No, there is just a cold paper record inherited from the administrative agency, and arguments by the parties about whether the agency applied the correct legal standards and issued a decision supported by that record. If so, the agency's decision is

Ariz. Sept. 18, 2008) (citing *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 770 (9th Cir. 1985)).

### III. Discussion

In affirming ONHIR's denial of benefits, the IHO found that Ms. Singer had failed to establish that she was a head of household prior to July 7, 1986. (Doc. 15-7 at 15-16.) He primarily rationalized that she could not prove head of household status because her June 8, 1985 tribal ceremonial marriage—conducted two months shy of her sixteenth birthday—was invalid under 9 N.N.C. § 5(2)(1977), which provided that a non-pregnant woman must reach sixteen years of age before marrying. (*Id.*) The IHO also rejected Ms. Singer's contention that, despite flaws in her ceremonial marriage, she nevertheless became a head of household by means of a common law marriage at some point prior to July 7, 1986, explaining,

> Applicant [] insists that there are other exceptions based on . . . common law recognition of marriage . . . None of these proposed exceptions are recognized in the Tribal Code [and] are not sustainable under any construction of the Navajo Tribal ordinance prescribing a minimum age of 16 for a female to marry[.]

(*Id*.) Simply put, the IHO determined that Ms. Singer could not satisfy the head of household requirement through any alleged common law marriage because the Navajo Code did not recognize common law marriages at the time, and in—any event—the Navajo Code would not recognize any sort of marriage entered into before age sixteen. However, at oral argument, the parties agreed that the Navajo Code did recognize common law marriage during the relevant period, and that Ms. Singer could have entered one following her sixteenth birthday.

In support, the parties point to 9 N.T.C. § 61 (1977) which reads,

> All purported marriages of members of the Navajo Tribe, not contracted by church, state or Tribal custom ceremony as defined by the resolutions of the Tribal Council, wherein such members were or are recognized as man and wife in their community, are validated and recognized as valid Tribal

affirmed. If not, it is reversed. Why summary judgment procedures routinely have been used to resolve these cases is lost on the Court.

- 4 -

custom marriages from the date of their inception.

Notably, ONHIR conceded at oral argument that Ms. Singer was a party to a common law marriage prior to July 7, 1986. Pivoting from prior positions, it instead argues that Ms. Singer merely does not qualify for benefits because she failed to submit a judgment, pursuant to 9 N.T.C. § 62, evidencing the validity of her common law marriage to the IHO. In contrast, Ms. Singer suggests that she was not required to acquire or submit such a judgment in order to prevail because 9 N.T.C. § 61 renders all common law marriages automatically valid from their inception, § 62 merely details the procedure for procuring evidence of validity that is unnecessary for validation, and she has other evidence to prove the validity of her common law marriage. The plain language of § 62(a) supports Ms. Singer's position:

> Any Navajo Indian, claiming that his or her marriage was validated by 9 N.T.C. § 61, may file a petition in any Court of the Navajo Tribe for a judgment declaring that such marriage was so validated [.]

The Court appreciates the complexity of this dispute and has contemplated certifying to the Navajo Supreme Court questions as to the effect of 9 N.T.C. § 62. The parties, however, have suggested certification is unnecessary here, and the Court agrees. The issue of what constitutes substantial evidence supporting or negating the existence of Ms. Singer's common law marriage is for the IHO—not for this Court—to decide. Because it is undisputed that the Navajo Code recognized common law marriages during the relevant period, but the IHO neglected to consider whether Ms. Singer was a party to one, the Court remands this case to the IHO to decide whether Ms. Singer was a party to a valid common law marriage, thereby giving her head of household status, prior to July 7, 1986.[2]

**IT IS ORDERED** that Ms. Singer's motion for summary judgment, insofar as it requests remand for further proceedings, (Doc. 29) is **GRANTED**. ONHIR's motion for

---

[2] The Court recognizes that the presentation of the common law marriage issue to the IHO was not a model of clarity. The Court, even after reviewing the administrative record and hundreds of pages of additional briefing, conducting independent research, and presiding over oral argument, arrives at its conclusion with caution. Therefore, the Court encourages the IHO to develop the record as he sees fit on remand.

summary judgment (Doc. 31) is **DENIED**. The matter is **REMANDED** for further proceedings consistent with this decision.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment in favor of Ms. Singer and terminate this case.

Dated this 6th day of August, 2020.

Douglas L. Rayes
United States District Judge